NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220115-U

NO. 4-22-0115

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 8, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.R. and J.A., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
| Petitioner-Appellee, | ) | No. 20JA59 |
| v. | ) | |
| Michael A., | ) | Honorable |
| Respondent-Appellant). | ) | J. Brian Goldrick, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the trial court's judgment because respondent forfeited the claims of error he raises for the first time on appeal.

¶ 2   Respondent, Michael A., was the presumed father, via voluntary admissions of paternity (VAPs), of J.A. (born May 2011) and J.R. (born July 2009). In May 2020, the State filed a petition for adjudication of wardship, alleging (1) J.A. and J.R. were neglected, (2) Kayla L. was their mother, and (3) Scott R. was their putative father. (The petition alleged that respondent was the putative father of two other minors who are not the subject of this appeal.) That same day, the trial court ordered paternity testing of J.A. and J.R. In June 2020, DNA test results were filed with the court showing that Scott R. was the biological father of J.A. and J.R.

¶ 3   In August 2020, the trial court adjudicated J.A. and J.R. neglected. In July 2021, the State filed a motion to terminate the parental rights of Kayla L. and Scott R. In November

2021, before the termination proceedings were held, the guardian *ad litem* (GAL) filed a "Motion for Declaration of Non-Existence of the Parent Child Relationship and Determination of Paternity" as to J.A. and J.R., which sought to invalidate the VAPs signed by respondent as to those two minors. In January 2022, the trial court granted the GAL's motion and discharged respondent as a party to the proceedings.

¶ 4 Respondent appeals, arguing that the trial court erred by (1) applying section 205 of the Illinois Parentage Act of 2015 (Act) (750 ILCS 46/205 (West 2020)) rather than section 309 of the Act (*id.* § 309) when determining the GAL's motion to declare the nonexistence of a parent-child relationship between respondent and J.A. and J.R. and (2) granting the GAL's motion because the GAL did not meet the requirements of section 309 that she (a) designate her motion a "petition" and (b) make a showing of fraud, duress, or material mistake of fact. Respondent argues in the alternative that, if the court was correct to apply section 205, the GAL's motion still fails because she did not designate her motion a "petition." We conclude that respondent has forfeited these arguments by failing to raise them in the trial court and affirm the judgment of the trial court.

¶ 5 I. BACKGROUND

¶ 6 A. Procedural History

¶ 7 1. *The Petition and Adjudicatory Hearing*

¶ 8 In May 2020, the State filed a petition for adjudication of wardship, alleging J.A. (born May 2011), and J.R. (born July 2009), were neglected in that their environment was injurious to their welfare when they resided with (1) their mother, Kayla L., due to her "unresolved issues of domestic violence and/or anger management" and "alcohol and/or substance abuse" and (2) their putative father, Scott R., due to his "unresolved issues of domestic violence and/or anger management." 705 ILCS 405/2-3(1)(b) (West 2020). (We note respondent was not named as a

putative father of J.A. and J.R. Respondent was included in the petition as the putative father of two other children he shared with Kayla L., namely R.A. (born September 2015) and K.A. (born October 2013).)

¶ 9        That same day, the trial court conducted a shelter care hearing and placed temporary custody of the minors with the guardianship administrator of DCFS. The court also entered an order for paternity testing of J.A. and J.R.

¶ 10        In June 2020, the results of DNA testing were filed with the court, showing Scott R. was the biological father of J.A. and J.R.

¶ 11        In August 2020, the trial court conducted an adjudicatory hearing and adjudicated J.A. and J.R. neglected.

¶ 12                                    2. *The Dispositional Hearing*

¶ 13        In October 2020, the trial court conducted a dispositional hearing and entered a written order finding Kayla L. and Scott R. to be unfit for reasons other than financial circumstances alone to care for, protect, train, educate, supervise, or discipline J.A. and J.R. and that placement with Kayla L. or Scott R. would be contrary to the health, safety, and best interests of J.A. and J.R. The court placed custody and guardianship of J.A. and J.R. with the guardianship administrator of DCFS and set the permanency goal as "return home [in] 12 months." (We note that, at the same hearing, the court found respondent fit as to R.A. and K.A. and awarded him custody. At the next hearing, the court awarded respondent guardianship of R.A. and K.A., terminated their wardship, and closed their portion of the case.)

¶ 14                                    3. *The Voluntary Acknowledgements of Paternity*

¶ 15        In July 2021, caseworker Natasha Bever of the Center for Youth and Family Solutions (CYFS) filed a permanency report regarding J.A. and J.R. In her report, Bever wrote that

she had "received two separate [VAPs] indicating [respondent] is the legal father of [J.R. and J.A.]." Bever further reported that she had spoken to a worker in the child support division who advised that "while there are paternity results as well as an order in a previous family court case involving [Scott R. and J.R.], there is very specific language that would need to be used in a court motion to vacate the VAPs and that has never been completed." Bever attached the VAPs to her report. The VAPs demonstrated that respondent executed and filed a VAP as to J.A. in May 2011 and a VAP as to J.R. in July 2009.

¶ 16                     4. *The Termination Proceedings*

¶ 17          Later in July 2021, the State filed a motion for termination of Kayla L. and Scott R.'s parental rights as to J.A. and J.R.

¶ 18          In September 2021, the trial court entered an order finding Kayla L. and Scott R. unfit for failing to make reasonable progress toward the return home of the minors during the nine-month period alleged in the motion to terminate parental rights.

¶ 19          In November 2021, Bever filed a best-interest report with the trial court. In the "Recommendations" section of her report, she requested that the parental rights of Kayla L. and "biological father" Scott R. be terminated and also that the parental rights of "legal father," respondent, be terminated.

¶ 20          B. The Motion to Declare the Non-Existence of Parent-Child Relationship

¶ 21                     1. *The Motion*

¶ 22          Later in November 2021, the GAL filed a "Motion for Declaration of Non-Existence of the Parent Child Relationship and Determination of Paternity." The motion alleged that (1) J.A. and J.R. were born when respondent and Kayla L. were in a relationship and (2) respondent signed voluntary acknowledgements of paternity for each minor. The motion

further alleged that, as part of the present case, Scott R. was determined to be the biological father of J.A. and J.R. Accordingly, the motion alleged, "it is in [J.A. and J.R.'s] best interest to identify their genetic father and for them to have only one father. It is not in [J.A. and J.R.'s] best interest that [respondent] be designated the legal father based on the [VAP]." The motion requested, therefore, that the court "declare the non-existence of the father and child relationship between [respondent and J.A. and J.R.] and declar[e] [Scott R.] is the biological father of [J.A. and J.R.] and that [respondent] be removed as a part[y] to this proceeding."

¶ 23                    2. *The Hearing on the Motion*

¶ 24        In January 2022, the trial court conducted a hearing on the GAL's motion. At the beginning of the hearing, respondent, through his counsel, asked the court to find that the GAL's motion was facially void because it cited to a section of a repealed version of the Illinois Parentage Act (750 ILCS 45/11(f)(3) (West 2014) (repealed by Pub. Act 99-85, § 977 (eff. Jan. 1, 2016))). The GAL asked for leave to amend the motion to (1) strike paragraph six, which cited to language from the repealed statute regarding a presumption of paternity based on DNA testing and (2) add to paragraph five a citation to section 205 of the current version of the Act (750 ILCS 46/205 (West 2020)). The court granted the GAL's oral motion to amend and clarified that the proceedings "regarding the non-existence of the parentage relationship" would be held pursuant to section 205. Respondent did not object to the motion to amend or the court's proceeding under section 205.

¶ 25                    a. The Evidence Presented

¶ 26        Next, the GAL requested the trial court take judicial notice of (1) the DNA results filed in June 2020, showing, with a probability of 99.99%, that Scott R. was the father of J.A. and J.R., (2) an order of paternity entered by the court in July 2020, naming Scott R. as the father of J.A. and J.R., based on the DNA results, and (3) the VAPs executed by respondent as to J.A. and

J.R. in 2011 and 2009, respectively. The court took judicial notice of the requested documents without objection by respondent. No other evidence was presented by any party.

¶ 27                                    b. The Arguments of the Parties

¶ 28        The GAL then argued that, based on the Illinois Supreme Court's ruling in *In re A.A.*, 2015 IL 118605, 43 N.E.3d 947, "before you can argue whether or not it's in the best interest of the minor for there to be an order declaring non-existence of the parent child relationship, you must first *** either establish paternity or disestablish paternity." The GAL further argued that, based on the documents the trial court judicially noticed, "it's very clear that paternity has already been established. The father of these boys is [Scott R.], is not [respondent]." The GAL asked the court to "vacate the VAPs that were filed previously" and "enter an order disestablishing paternity between each of these boys and [respondent]."

¶ 29        Respondent argued that the issue before the trial court was "whether or not there exists a parent child relationship in this case between [respondent and J.A. and J.R.]" Respondent asserted it was clear that respondent was a father to the boys "in all ways that matter," noting that respondent was in the hospital at their birth, raised them, took them to practices, helped with schoolwork, and took care of their "activities of daily living." Respondent also argued that when he signed the VAPs, he voluntarily assumed responsibility of being a parent to the children and agreed to forego any further inquiry into whether or not he was the children's biological father. Respondent continued, "And, just as it would be unreasonable to allow [respondent] later based solely on DNA to get out of that responsibility, *** this court should not grant the [GAL's] motion to basically have a termination hearing through this motion where the burden is different." Respondent then argued that pursuant to section 204(b) of the Act (720 ILCS 46/204(b) (West 2020)), if conflicting presumptions of paternity arose under section 204, the court could resolve

that conflict by considering the minors' best interests. Respondent claimed it would be contrary to J.A. and J.R.'s best interests to vacate the VAPs and "make [them] orphans."

¶ 30                                        c. The Trial Court's Ruling

¶ 31        Following the arguments of the parties, the trial court observed that *A.A.* "uses the old statutory provisions," but "we know the Parentage Act controls." The court observed that section 205(c) of the Act permits the court to "direct the mother, child and alleged father to submit to DNA tests to determine inherited characteristics." The court noted that it ordered such testing, and the results were on file in this case, showing that Scott R. "cannot be excluded as the biological father of the children." The court continued as follows:

> "[W]hile there is a voluntary acknowledgement that has been signed by [respondent], *** we now have DNA testing that shows [respondent] is not the biological father, because [Scott R.] has been established as the father. Orders were entered in this court [in July 2020] as referred by [the GAL.] There was no dispute made of the DNA tests at the time or objections to the entry of those orders."

¶ 32        The trial court further noted that the birth certificates of J.A. and J.R., which were on record in the present case, showed respondent as the father of J.A. and Scott R. as the father of J.R. As a result, the court observed, there were inconsistencies in the birth certificates and the VAPs and "this is a legal determination that needs to be made." The court stated as follows:

> "[The] Parentage Act contains no express requirement that a court consider the best interest of the child before any testing is conducted or a legal determination of paternity is made. The first step in the proceeding is to establish or disestablish parentage. And that's what we did in this case. We established that [Scott R.] was the father of these children. Once parentage has been established, then the trial court

is charged with the responsibility of deciding other issues which surround paternity, including custody and visitation, issues that we may take up in the context of this JA case.

So the first step is paternity, and that's been done, and [Scott R.] is the father. [Respondent] is not, based upon those results. So, I think [the GAL] has established in her motion that there is no, I don't want to say no relationship, but there is no—we have a legal—we have a biological father, and that's been established. That's sufficient enough based upon case law in looking at this legal issue to disestablish or determine the non-existence of [respondent's] relationship with these two children."

¶ 33    On this basis, the trial court granted the GAL's motion.

¶ 34    That same day, the trial court also entered a written order granting the GAL's motion. The court found that respondent "was designated the legal father of the minor[s] based in [*sic*] his execution of Voluntary Acknowledgements of Paternity whereby he claimed to be the minors' biological father," but in July 2020, "this court found that [Scott R.] was the biological father of the minors." As a result, the court found, respondent "is not the legal father [of J.A. and J.R.] and that the VAPs are null and void and he is discharged as a party."

¶ 35    This appeal followed.

¶ 36                                II. ANALYSIS

¶ 37    Respondent appeals, arguing that the trial court erred by (1) applying section 205 of the Act (750 ILCS 46/205 (West 2020)) rather than section 309 of the Act (*id.* § 309) when determining the GAL's motion to declare the nonexistence of a parent-child relationship between respondent and J.A. and J.R. and (2) granting the GAL's motion because the GAL did not meet

the requirements of section 309 that (a) she designate her motion a "petition" and (b) make a showing of fraud, duress, or material mistake of fact. Respondent argues in the alternative that, if the court was correct to apply section 205, the GAL's motion still fails because she did not designate her motion a "petition." We conclude that respondent has forfeited these arguments by failing to raise them in the trial court and affirm the judgment of the trial court.

¶ 38        "To preserve an issue for appellate review, a party must, even in child custody cases, object at trial and file a written posttrial motion addressing it." *In re Chance H.*, 2019 IL App (1st) 180053, ¶ 45, 139 N.E.3d 88. In the present case, respondent did not raise any of the issues he brings on appeal at any time before the trial court—neither at the hearing on the GAL's motion nor in a postjudgment motion. Because respondent is raising these issues for the first time on appeal, review of the issues is forfeited. *Id.*

¶ 39        We note that respondent did not merely forfeit his argument by failing to argue in the trial court that section 309 of the Act controls, but, instead, stood silent when the court permitted the GAL to amend its motion to seek invalidation of the VAPs pursuant to section 205. Further, respondent argued to the trial court that section 204 applied to the extent competing presumptions existed, which he maintained required a ruling in his favor. Accordingly, respondent clearly consented to the trial court's review of the issue pursuant to section 205 and cannot now claim, for the first time, that the court's doing so was error.

¶ 40        We reiterate that, when the trial court granted the GAL's motion to amend the petition to add a citation to section 205 of the Act and the court stated it was proceeding under section 205, respondent (1) made no contemporaneous objection and (2) failed to argue the court proceeded in error in a postjudgment motion. (Indeed, respondent made no reference to section 309 until he filed his brief with this court.) Had respondent raised his claims of error with the trial

court, the court could have had the opportunity to make any necessary corrections to its judgment. See *People v. Thompson*, 238 Ill. 2d 598, 612, 939 N.E.2d 403, 413 (2010) ("We have stressed the importance of applying the forfeiture rule uniformly except in compelling situations because failure to raise a claim properly denies the trial court an opportunity to correct an error \*\*\*, thus wasting time and judicial resources.").

¶ 41 The importance of honoring the rationale underlying procedural default is particularly true in this case, which involves the application of complex facts to a technical statute in the context of contested parentage in a juvenile neglect case. The trial court should have been apprised of the alleged errors and been given the chance to correct them, if necessary. This court declines respondent's request to reverse the trial court based upon the complex, technical issues raised in this case for the first time on appeal.

¶ 42 III. CONCLUSION

¶ 43 For the reasons stated, we affirm the trial court's judgment.

¶ 44 Affirmed.